```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
HOVSEP GREGORIAN,

                        Plaintiff,                         MEMORANDUM & ORDER

         -against-                                         07 CV 5210 (RJD) (MDG)

NEW YORK LIFE INSURANCE
COMPANY,

                        Defendant.
----------------------------------------------------------X
```
DEARIE, Chief Judge.

For the reasons that follow, plaintiff's motion to remand this removed action to state court is granted.

## BACKGROUND

Plaintiff Hovsep Gregorian commenced this action on or about September 30, 2005 in the Supreme Court of the State of New York, Kings County. He alleges that his former employer, defendant New York Life Insurance Company, discharged him and in other ways discriminated against him on the basis of his age and race, and retaliated against him for complaining about such discrimination, in violation of the anti-discrimination laws of New York State, N.Y. Executive Law § 296 (the "State Human Rights Law"), and New York City, N.Y.C. Admin Code § 8-502 (the "City Human Rights Law").

Two of plaintiff's four causes of action assert age discrimination: the third, in which plaintiff alleges that he "was discharged by defendant because inter alia [sic] he was 51 years old," in violation of the State Human Rights Law, and the fourth, in which plaintiff alleges that "[b]y terminating him because of his age," defendant violated the City Human Rights Law.

Cmplt. ¶¶ 43, 50.

Within his state age claim, however, plaintiff also makes the following allegations:

> 40. Defendant has a policy that if an employee is 55 years old and has worked for the Company for 10 years, he or she will receive an extremely generous retirement package.
>
> 42. At the time plaintiff was discharged by defendant, plaintiff had worked for defendant for 20 years. Had defendant not wrongfully terminated plaintiff, but instead continued his employment until he attained the age of 55, plaintiff would have been entitled to defendant's retirement package valued at approximately $1.332 million—which would have guaranteed him no less than $58,000 a year for the rest of his life.
>
> 43. Upon information and belief, plaintiff was discharged because *inter alia* he was 51 years old.

Cmplt. ¶¶ 40-43.

In addition, paragraph one of the complaint avers as follows: "Specifically, defendant illegally discharged plaintiff from his job *because he was 51 years old and approaching the vesting* of a $1.334 million dollar [sic] pension." Cmplt. ¶ 1 (emphasis added).

On December 14, 2007, more than two years after being served with the complaint, defendant removed the action to this Court. Defendant's position is (i) that plaintiff's age claims, despite their label, actually fall within the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., and (ii) that ERISA preempts the State and City Human Rights Laws, thereby rendering plaintiffs claims under those laws "federal" and thus removable.

As to timing, defendant asserts that removability was not apparent on the face of the complaint but only became so during plaintiff's deposition in November 2007. It was at that proceeding, defendant argues, that plaintiff "changed courses," Def. Ltr. Oct. 31, 2008 at 2, and for the first time revealed that he believed "New York Life had terminated his employment for

2

the purpose of precluding him from vesting in certain pension benefits." Id. In light of that revelation, defendant asserts, it became clear that plaintiff's state-law age discrimination claims were in reality claims "for benefits under Section 502(a)(1)(B)" of ERISA alleging that defendant "purposefully interfered with his attainment of retirement/pension benefits in violation of Section 510 of ERISA."[1] Notice of Removal ¶ 5.

Defendant relies on the following portion of plaintiff's deposition:

> Q: . . . Is it your allegation in this lawsuit that you were terminated at age 51 for the purposes of depriving you of some retirement benefits?
>
> A: That's right.
>
> Q: And what benefits are you claiming that you would have gotten and were deprived of based on the fact that you were terminated at age 51?
>
> A: The pension. There's a defined benefit pension which is sharply reduced if you leave before 55. And, also, if you wait to age 55, the company pays a portion of your medical benefit for you and your spouse for the rest of your life, and the rest of your spouse's

---

[1] Section 502, of course, is ERISA's civil enforcement provision, and subsection (a)(1)(B) is the basic authorization for beneficiary damage suits. It provides, in pertinent part that, "[a] civil action may be brought—
   (1) by a participant or beneficiary—

   (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. §1132 (a)(1)(B).

Section 510 of ERISA provides in part that, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan]." 29 U.S.C. § 1140.

> life.
>
> . . .
>
> Q.   —are you claiming that they were nitpicking at you so they could fire you before age 55 and deprive you of these benefits?
>
> A.   That's correct.
>
> Q.   And that would be the benefits under the defined benefit pension plan?
>
> A.   That's right.

Tr. Nov. 17, 2007 at 94-95.[2]

In its motion for remand, plaintiff disputes defendant's position on ERISA-based preemption and the asserted federal nature of his age claims, but also argues that, in any event, the removal was untimely because the asserted grounds for removability were evident on the face of the complaint.

## DISCUSSION

**A. Standards for Removal**

Congress has established two requirements for the exercise of removal jurisdiction. First, there must exist within the removed action a basis for the exercise of the district court's original jurisdiction. See 28 U.S.C. § 1441(a). The presence of a "federal question" is one such basis. 28 U.S.C. § 1331 (creating jurisdiction for claims "arising under the Constitution, laws, or treaties of the United States"). The analysis "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386,

---

[2] Plaintiff's other two claims allege race-based discrimination in violation of New York Labor Law § 740(2)(a) and New York City Administrative Code § 8-107. Defendant does argue that these claims are preempted, but only that the federal nature of the age claims can, under 28 U.S.C. § 1441(c), make the entire case removable.

4

392 (1987). Courts look to what "necessarily appears in the plaintiff's statement of his own claim," Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004) (quotation marks and internal citation omitted), and, in most circumstances, removal is not based "on the anticipation or avoidance of defenses which it is thought the defendant may interpose." Id. (internal citation omitted). Rather, the plaintiff's complaint itself establishes whether the cause of action arises under federal law. Id. As the Supreme Court has explained, "[t]he rule makes the plaintiff the master of the claim," and "he or she may avoid federal jurisdiction by exclusive reliance on state law." Id.

An exception to the well-pleaded complaint rule, however, exists "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8 (2003). As the Supreme Court has explained, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law" and is thus removable. Id. See also Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987) ("Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal").

The second requirement for removal is promptness—ordinarily, the filing of a notice of removal within thirty days after receipt of the initial pleading. 28 U.S.C. § 1446(a), (b). The statute further provides, however, that "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

5

In determining whether it is the complaint or some later "paper" that starts the thirty-day removal clock, this Court, in Soto v. Apple Towing, 111 F. Supp. 2d 222 (E.D.N.Y 2000), joined other courts in declining to impose upon defendants an affirmative duty to investigate the possible federal features of a poorly drafted pleading. See 111 F. Supp. 2d at 224, 226. This Court's decision in Soto fully recognizes, however—as is reflected in the removal statute's use of the word "ascertained"—that defendants may not turn a blind eye to grounds for removal that can be "intelligently ascertain[ed]." Soto, 111 F. Supp. 2d at 226. The Soto decision registers its agreement with the Tenth Circuit's view that "'ascertained' as used in section 1446(b) means a statement that should not be ambiguous or one which requires an extensive investigation to determine the truth." Id. (quotation marks and internal citation omitted). Soto also relies on district court decisions requiring that "the facts warranting removability" be "explicit" and that "the elements of removability . . . be specifically indicated in official papers," id. at 225, and endorses the teaching of *Moore's Federal Practice* that section 1446(b) requires only that defendants have "fair notice that the case is removable." Soto, 111 F. Supp. 2d at 225-26 (internal citations omitted here).

As to both removal requirements, it is well established that "[r]emoval jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." Miller v. First Sec. Investments, Inc., 30 F. Supp. 2d 347, 350 (E.D.N.Y. 1998) (quotation marks and internal citation omitted). As the Supreme Court has taught, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined." Shamrock

6

Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-109 (1941).  On a motion for remand, the removing party bears the burden of demonstrating the jurisdictional basis for removal.  California Public Employees' Retirement System v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004), cert. denied, 543 U.S. 1080 (2005), and "the court construes all factual allegations in favor of the party seeking the remand."  O'Brien & Gere Ltd. v. Business Software Alliance, 2008 WL 268430 (N.D.N.Y. 2008).

**B. Analysis**

The timing of defendant's removal obviates the need for this Court to decide whether plaintiff's state and city age discrimination claims create removable federal questions under ERISA.  Whether or not the claims sound in ERISA, the Court agrees with plaintiff that the basis for seeking to so characterize them was no less apparent when the complaint was served than when plaintiff testified two years later.  The removal, therefore, is untimely.

The Court rejects defendant's claim that plaintiff "changed courses" at his deposition and finds the assertion, in the context of this case and from a defendant whose livelihood is insurance and benefits, to be disingenuous.   To the contrary, the deposition testimony, as this Court reads it, is entirely consistent with the allegations in paragraphs 1 and 40-43 of the complaint, with portions of that testimony tracking, almost verbatim, portions of the cited allegations.  Thus, without deciding whether plaintiff's claims for age discrimination fall within the scope of ERISA and thus make the case eligible for timely removal, the Court finds that what defendant asserts as the basis for so construing the age claims was clear on the face of the initial pleading in this action.  See Soto, 111 F. Supp. 2d at 225.

Defendant cannot ignore the plain language of the complaint.  Instead, defendant argues

7

that, in the context of the entire pleading, paragraphs 1 and 40-43 furnished, at most, notice that loss of benefits was an alleged element of damages resulting from plaintiff's discharge but not that pension status was the reason (or one of the reasons) he was fired.  Defendant relies on authority drawing this distinction, see, e.g., Dister v. Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988) ("[n]o ERISA cause of action lies where the loss of . . . benefits was a mere consequence of, but not a motivating factor behind, a termination"), and suggests that ERISA-based removal when the line between damages and motive is uncertain would have been improvident.  Those concerns, however, seem neither apposite nor genuine here, for there is nothing cryptic or even ambiguous about the theory asserted in paragraphs one and 40-43.

Assuming, as defendant argues, that plaintiff's deposition testimony can be understood as claiming that he was fired because of his pension status (and thus as invoking the protections of Section 510 of ERISA, *inter alia*), an objectively reasonable reading of paragraphs 1 and 40-43 of the complaint necessarily implicates Section 510 no less than the deposition does.  As the Second Circuit has explained, Section 510 "was designed primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights."  Dister, 859 F.2d at 1111.  In their sequence, paragraphs 40 through 43 are a simple narrative that tells, no less so than plaintiff's deposition testimony, of the harms that Section 510 prohibits; namely, that defendant fired plaintiff at the time that it did, when plaintiff was 51 years of age, for the purpose of depriving him of the "extremely generous retirement package" (Cmplt. ¶40) that he would have become entitled to had his employment continued for only four additional years.  Paragraph one makes this same assertion in a concise, explicit, single sentence.  Even if, as defendant argues, the allegation in paragraph one were to be regarded as

merely introductory in nature, and functioning more as a preface than as a formal element of one of plaintiff's claims, its explicitness in identifying pension status as *a* cause for the termination cannot be disregarded.

It is of course well established that pension status need not be the *only* cause of a termination for section 510 to apply, Dister, 859 F.2d at 1111 ("[a]n essential element" of a section 510 claim is proof "that an employer was *at least in part* motivated by the specific intent to engage in activity prohibited by § 510") (emphasis added), so ERISA-based removal need not await an ultimate and definitive elimination of age as a motive for the challenged termination. Indeed, the Supreme Court has astutely refused to "rule out the possibility of dual liability" under ERISA and age discrimination laws "where the decision to fire the employee was motivated both by the employee's age and by his pension status." Hazen Paper Co. v. Biggins, 507 U.S. 604, 613 )(1993). As the Court has also recognized, "pension status may be a proxy for age . . . in the sense that the employer may suppose a correlation between the two factors and act accordingly." Id.

Taken together, these features of ERISA and age discrimination law, the explicitness with which the complaint gives defendant notice that pension status is at least *a* motivating factor in plaintiff's discharge, and the consistency between the complaint and plaintiff's deposition on this point, all serve to undermine a claim by defendant that a legitimate need to investigate or clarify plaintiff's claims could justify the two–year delay in removing. In short, whatever may be the strength of defendant's asserted grounds for removal, those grounds could have been

9

"intelligently ascertained" from the complaint. Soto, 111 F. Supp. 2d at 226.[3]

Finally, it bears remarking that, although Section 502(a)(1)(B) of ERISA "provides an exclusive federal cause of action," Taylor, 481 U.S. at 63, jurisdiction to entertain that cause of action is *not* exclusively federal, but concurrent with the courts of the various states. 29 U.S.C. § 1132 (e)(1)(B). See also 29 U.S.C. § 1140 (section 510 claims subject to enforcement provisions of section 502). Thus, even assuming plaintiff's claims were recharacterized as the particular ERISA claims that defendant asserts them to be (i.e., Sections 502(a)(1)(B) and 510), it appears that, contrary to views expressed at the status conference on October 27, 2008, an order of remand would not likely force plaintiff to the hard choice of forfeiting certain of his claims or else remaining in the federal forum that he did not choose.

## C. Attorney's Fees and Costs

The removal statute contemplates that an improper removal followed by remand can waste judicial resources and create hardship on the opposing party and as a result, authorizes courts to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Whether to award fees is a decision committed

---

[3] Were it necessary to reach the question, the Court would conclude that, even if plaintiff's age claims are sufficiently benefits-related to appear to be ERISA claims, they actually fall within a clear exception to ERISA preemption. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983) (because ERISA cannot preempt *federal* discrimination laws such as Title VII, and because Title VII relies upon a joint state/federal enforcement scheme, ERISA also does not preempt *state* human rights laws that prohibit the same behavior as a federal statute); Devlin v. Transportation Commun. Int'l Union, 173 F.3d 94, 100-101 (2d Cir. 1999) (applies Shaw to save age discrimination provision of New York State Human Rights Law from ERISA preemption). The Supreme Court holdings in Taylor, Aetna and Ingersoll Rand v. McClendon, 498 U.S. 133 (1990), are not to the contrary. The benefits-related state law claims held to be preempted in those cases were based on the common law—contract in Taylor, 481 U.S. at 63-67, negligence in Aetna, 542 U.S. at 221, and wrongful discharge in Ingersoll Rand, 498 U.S. at 138—not an anti-discrimination statute that is part of a joint state/federal enforcement scheme.

to the trial court's discretion.  Martin v. Franklin Capital Corp., 546 U.S. 132, 140-41 (2005).  As Martin explained, that discretion should be guided by the "reasonableness of the removal," and the decision to award fees should reflect a balance between "the desire to deter removals sought for the purpose of prolonging litigation" and the need to protect the basic right to remove.  Id.

Although the Court reaches its decision to remand with little hesitation and is not insensitive to the costs plaintiff has borne—and, were it so inclined, could therefore justify a fee award—the Court also remains sensitive to the often hybrid nature of age and ERISA claims and the grey middle zone in which age and ERISA litigators may find themselves.  The Court therefore declines to order fees in this case.  Despite his costs, plaintiff is now being returned to the forum of his choice; defendant, it is hoped, has emerged with a better understanding of its obligations under the removal statute; and both parties, it appears, having acquired considerable command of the controlling substantive law, may find that any future substantive motions in the case are better framed and ultimately less costly to brief.

## CONCLUSION

Plaintiff's motion to remand is granted, but the motion for costs and attorneys' fees is denied.  The Clerk shall remand the matter to the Supreme Court of the State of New York, Kings County.

SO ORDERED.

Dated: Brooklyn, New York
January 26, 2009

_____
RAYMOND J. DEARIE
United States District Judge